Robert NORMAN, et al.

v.

AUBREY BURKE AND ASSOCIATES, et al.

Civ. A. No. 82–3906.

United States District Court, E.D. Louisiana.

May 3, 1984.

Frank S. Bruno, New Orleans, La., for plaintiffs.

Charles R. Capedeville, Metairie, La., for The Fidelity and Cas. Co.

Christovich & Kearney, Charles W. Schmidt, III, New Orleans, La., for Aubrey Burk & Associates and Fidelity & Cas. Co. of N.Y.

Camp, Carmouche, Barsh, Hunter & Gray, Joseph G. Gallagher, Jr., New Orleans, La., for Dixie Well Service, Inc. of Miss., Mission Ins. Co.

Bailey & Leininger, Robert C. Leininger and Darryl D. Sicarelli, Metairie, La., for Early American Ins. Co.

Lester J. Lautenschlaeger, Jr., New Orleans, La., for Atlas Assurance Co.

## OPINION

ARCENEAUX, District Judge.

Robert Norman and his wife, Kristi, brought this action under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law against Norman's employer, Aubrey Burke and Associates, Inc. (Burke) and against the owner of the vessel on which Norman allegedly was injured, Dixie Well Services of Mississippi (Dixie). Defendants moved for summary judgment dismissing Norman's Jones Act claim, on the ground that he was not a Jones Act seaman. The Court granted defendants' motion, and Norman moved for reconsideration. For the reasons stated below, Norman's motion for reconsideration will be granted, and the Court's prior order in this matter will be vacated.

## FACTS

Norman worked for a field surveying outfit, Burke, for three and one-half weeks in the later summer of 1981. Burke was training Norman to become the party chief of a Burke surveying crew. He spent his first eleven days in the office familiarizing himself with Burke's surveying business. The remaining seventeen days he spent in the field, seven of which involved work aboard a vessel. Initially, his official title was junior party chief, though he had a variety of responsibilities, including mooring and unmooring work boats, loading and unloading surveying equipment from the boats, operating surveying instruments both on the boats and from fixed positions offshore, drawing field notes, doing surveying calculations, and giving navigational instructions to the captain of the boat.

Occasionally, Burke utilized its own vessels for the surveying operations. More often, however, it chartered work boats for the surveying task. The vessels served various functions in the surveying operations. They transported men and equipment between the shore and the various surveying sites. In addition, the surveying operations required the use and mobility of the vessels. Surveying equipment was operated and surveying calculations were taken aboard the vessels. The vessels were maneuvered in order to coordinate calculations by reference to fixed points offshore. Buoys were dropped from the vessels when

appropriate sites were selected. Finally, the vessels swept the selected area to search for submerged objects which could interfere with future drilling operations.

Norman's tours of duty took him to such places as Breton Sound and Grand Lake, and they generally lasted from two to three days. Norman's last assignment came on September 7, 1981, when he participated in a surveying job at Breton sound aboard the MARTHA L, a work boat that Burke chartered from Dixie. Unfortunately, Norman was injured while moving field surveying equipment from a landing at Hopedale, Louisiana onto the MARTHA L. This action followed.

## LAW

Under the Jones Act, "any seaman who shall suffer a personal injury in the course of his employment" has a right to claim damages in an action alleging that his employer was negligent. 46 U.S.C. § 688. The question in this motion is whether Robert Norman was, when he was injured, a seaman.

■ In passing on Norman's motion, the Court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the plaintiff. When viewed in this light, the Court must determine whether there is any genuine issue as to any material fact and whether the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Ordinarily, whether the plaintiff is a seaman is a fact question to be resolved by the jury, and "[o]nly in rare cases is the question taken from the jury or trier of facts … [t]he issue is to be left to the jury even when the claim to seaman status appears to be relatively marginal." *Wallace v. Oceaneering International*, 727 F.2d 427, 432 (5th Cir.1984) (citations omitted). Nevertheless, when there is no genuine factual dispute to be resolved on this issue, the Court may enter summary judgment on a seaman's status. *Coulter v. Texaco, Inc.*, 714 F.2d 467, 468 (5th Cir.1983).

■ The basic issue of seaman's status involves the following two elements: (1) whether the claimant was assigned permanently to a vessel, or performed a substantial part of his work on a vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or anchorage for its future trips. *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959).

The first element of the Robison test concerns the extent of the claimant's connection with the vessel. This element has two prongs, the "permanent assignment" prong and the "substantial work" prong, which offer alternative grounds for meeting the standard. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 326 (5th Cir.1977). The "permanent assignment" prong contemplates a vessel relationship that is substantial in point and time and not merely sporadic. *Dove v. Belcher Oil Co.*, 686 F.2d 329, 333 (5th Cir.1982). However, "the word 'permanent' has never been given a literal meaning under the Jones Act … but rather is to be used as an analytic starting point instead of a self-executing formula. The key is that there must be a relationship between the claimant and a specific vessel or identifiable group of vessels." *Roberts v. Williams-McWilliams*, 648 F.2d 255, 261–62 (5th Cir.1981). There is nothing about the expanding concept of seaman's status which limits it mechanically to a single ship. *Braniff v. Jackson Avenue-Gretna Ferry, Inc.*, 280 F.2d 523, 528 (5th Cir.1960). Further, the fact that an employer charters, rather than owns, the vessels upon which the employee works has not affected the claimant's seaman's status. *See Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 281 (5th Cir.1981). That a claimant's work places him on several different vessels is relevant, however, to the seaman's status determination. Generally, as the number of vessels increases and the period of service decreases, the claimant's relationship with the vessels

tends to become more tenuous and transitory. *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 246 (5th Cir. 1983).

■ To satisfy the "substantial work" prong of the Robison test, the claimant must show that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity. *Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350, 353 (5th Cir.1982). There is no precise delineation of that quantum of duties which, when performed on board a vessel, will make the employee a seaman, and no bright line test determines the degree of frequency and regularity of performance which must be shown in order to claim seaman's status. *Keener v. Transworld Drilling Co.*, 468 F.2d 729, 731–32 (5th Cir.1972). The Court must consider all of the circumstances of the claimant's employment to determine the relation of vessel-related activities to the claimant's total responsibilities. *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1346 n. 6 (5th Cir.1980).

The second part of the Robison test concerns whether the claimant's work activities contributed to the vessel's mission, operation, or welfare. Basically, this element requires that the claimant have worked aboard the vessel primarily to aid in navigation. 1B *Benedict on Admiralty* § 11a (7th ed. 1982). However, the requirement may be satisfied where the claimant's duties merely contributed to the function and operation of the vessel, or to the accomplishment of its mission. *Brown v. ITT Rayonier, Inc.*, 497 F.2d 234, 237–38 (5th Cir.1974). Also, a claimant may satisfy this requirement where his duties were limited to aiding in the operation or welfare of the vessel in terms of maintenance during its movement or during its anchorage for future trips. Benedict, *supra* at § 11a. The Court must take a realistic look at the actual relationship between the employee's duties and the function of the ship or the accomplishment of its mission. *Bazile v. Bisso Marine Co., Inc.*, 613 F.2d 314 (5th Cir.1980).

ANALYSIS

I. *Vessel relationship*

a. "permanent assignment" prong

■ The "permanent assignment" prong requires a close link between the claimant and a specific vessel or identifiable group of vessels. Burke utilized neither a specific vessel nor an identifiable group of vessels for its surveying operations. Norman worked aboard a variety of vessels which Burke either owned or chartered. However, which work boat was chartered for a particular operation apparently was determined on an *ad hoc* basis. Norman never worked aboard the same vessel more than once, and thus he had never stepped onto the MARTHA L before September 7, 1981, the day he was injured. Accordingly, Norman's relationship to the Burke vessels fails to satisfy the "permanent assignment" prong of the Robison test. This does not mean that he fails to satisfy the first element of the Robison test. As mentioned above, the first element has two prongs, which offer alternative grounds for meeting the standard.

b. "substantial work" prong

The "substantial work" prong requires that the claimant have performed a significant part of his work aboard a vessel. Norman worked roughly twenty-five days for Burke. Seventeen of those days he spent in the field. Seven of those days, or thirty-six percent, involved work aboard a vessel. Thus, Norman performed more than an insignificant part of his work aboard a vessel.

Further, Norman was a new employee, in training to become party chief of a Burke surveying crew. Consequently, he spent the first eleven days of his tenure in the Burke office, familiarizing himself with Burke's surveying business. Norman needed only to be indoctrinated once. Afterwards, he spent all of his time in the field. Thus, looking realistically at the circumstances of Norman's employment, one must discount the importance of the first

eleven days of Norman's tenure. From that perspective, *fifty* percent of Norman's work days involved work aboard a vessel. Certainly, then, Norman performed a substantial part of his work aboard a vessel.

Finally, Norman's contribution to the marine surveying operations was meaningful. He came aboard the various Burke vessels to assist in the surveying operations. He remained connected with the vessels for the duration of those operations. The surveying crew used Norman for a variety of tasks, which cut across the various phases of the surveying operations. Further, Burke is a general surveying firm, engaged in both land and marine operations. Consequently, Norman trained for and participated in both land and sea-based projects. His input into the latter was no less significant than his input into the former. Norman spent two to three days on each vessel chartered for the marine surveying operations, which comprised the entire duration of those operations. Thus, Norman's marine based work, both in isolation and in relation to his land-based activities, satisfies the first element of the Robison test.

## II. *Contribution to mission*

Norman's duties undoubtedly contributed to the function and operation of the vessels. The function of the vessels was to assist in the locating and marking of drill sites. Norman clearly aided that function. He assisted in clearing the deck in preparation for the surveying operations, in loading and unloading the vessels with surveying equipment, in giving navigational instructions to the captain, and in giving manual assistance, both on and off the vessels, to the marine surveyors. Norman may not have been, as defendants argue, anything more than an equipment man, uninvolved in the niceties of marine surveying. Nevertheless, his activities contributed to the success of the surveying projects. No more is required under the "contribution to mission" element of the Robison test.

Defendants argue that Norman fails to satisfy this element of the Robison test because he did not participate in the navigation of the surveying vessels. However, their argument conceives of the second element of the Robison test too narrowly. The requirement may be satisfied where the claimant's duties merely contributed to the accomplishment of the vessel's mission. *Brown, supra,* at 237–38. A vessel's mission often transcends mere navigation. Vessels often are dedicated to special purposes. *See, e.g., Coulter, supra* at 469 (5th Cir.1983) (vessels specially dedicated to aiding roustabouts in navigating and maintaining flow lines and wells in oil fields). The Burke vessels were specially dedicated to assisting the surveying crews in marine surveying operations. Clearly, Norman's activities contributed to the accomplishment of that mission.

Defendants next argue that the Burke vessels were utilized only to transport men and surveying equipment to and from fixed work sites. Defendants attempt to divorce the object of the surveying operations (locating and marking drilling sites) from the mission of the vessels (transportation), and argue that Norman contributed only to the former, but not to the latter. The divorce is not so easy. Each of the various marine surveying techniques required the use of a vessel. For example, when locating a site by triangulation or inspection, the vessel is navigated between the line of sight of two surveyors observing from fixed positions adjacent to the desired drilling site. Members of the surveying crew direct the captain to the desired spot and prepare to drop a buoy when a site has been located. The surveying crews set soundings using a fathometer to calculate the water depth beneath the drill site selected. Then, the vessel sweeps the area using a fathometer to search for submerged objects which could interfere with future drilling operations. Norman certainly contributed to the success of the surveying operations. Necessarily, he also contributed to the mission of the surveying vessels.

In many respects, this case is very similar to *Gillespie v. Louisiana Offshore Oil Port Inc.,* Civ. No. 80–624 (E.D.La.1981,

Arceneaux, J.). In *Gillespie,* claimant was a Louisiana Wildlife and Fisheries Department biologist working on a Louisiana Offshore Oil Port (LOOP) project pursuant to a contract between the Department and LOOP. She was injured while carrying buckets of bottom samples from the Gulf aboard the M/F JUDY & GARY. Her employer moved for summary judgment on the issue of seaman's status. This Court denied the motion, based on the following facts. First, claimant had performed vessel-related sampling duties on about five trips, none of which lasted overnight, during the last years of her tenure with the Department. Second, claimant was associated with the JUDY & GARY only on October 25 and October 26, 1979, for the purpose of taking bottom samples. Third, she helped direct the crew of the vessel to various sampling stations. Finally, her tenure aboard the vessel was uncertain, though it appeared that she would have gathered several more samples in the two weeks following her injury.

While similar, Norman's case is stronger than Gillespie's. Norman's contribution to the operation was more extensive than Gillespie's. Norman assisted the surveying projects from start to finish, whereas Gillespie participated in only a certain portion of the bottom sampling project. The surveying excursions lasted several days, while the LOOP excursions lasted only a day each. Gillespie was a land-based biologist, whereas Norman assisted surveying projects conducted both on land and over water. In short, the Court cannot consistently deny Norman seaman's status having reserved Gillespie's case for the jury.

IT IS THEREFORE ORDERED that the motion of plaintiff for reconsideration of this Court's order dismissing plaintiff's Jones Act claim is hereby GRANTED, and this Court's previous order on this matter is hereby VACATED.