**PACIFIC MERCHANT SHIPPING ASSOCIATION, a nonprofit California corporation; American Institute of Merchant Shipping, an unincorporated trade association; Offshore Marine Service Association, a nonprofit Louisiana corporation; Western Oil & Gas Association, a nonprofit California corporation; and Clean Seas, an unincorporated cooperative association, Plaintiffs,**

v.

**Lloyd W. AUBRY, Jr., Labor Commissioner, Division of Labor Standards Enforcement, Department of Industrial Relations, State of California, Defendant,**

**Tidewater Marine Service, Inc. and Western Boat Operations, Inc., Intervenors.**

No. CV 88–0848–AWT.

United States District Court, C.D. California.

March 1, 1989.

Musick, Peeler & Garrett, a Law Partnership including Professional Corporations, Los Angeles, Cal., Richard J. Simmons, P.C., Thomas E. Hill, Los Angeles, Cal., Bright & Powell, Gary M. Bright, Carpinteria, Cal., for plaintiffs.

Division of Labor Standards Enforcement, H. Thomas Cadell, Chief Counsel, Ramon Yuen–Garcia, San Francisco, Cal., for defendant.

Sheldon A. Gebb, Bill E. Schroeder, Michael M. Johnson, McCutchen, Verleger & Shea, Los Angeles, Cal., for intervenors.

Frank J. Artusio, Anticouni & Anticouni, a Professional Corp., Santa Barbara, Cal., amicus curiae.

## MEMORANDUM OPINION

TASHIMA, District Judge.

### I. BACKGROUND

This case raises a novel issue of federal admiralty law: Whether California can apply its overtime pay provisions to seamen and to maritime employees employed on vessels situated primarily on the high seas.

Plaintiffs and intervenors seek declaratory and injunctive relief that California's labor laws are preempted by federal admiralty law and the United States Constitution insofar as they purport to regulate the wages, hours and working conditions of maritime employees whose work situs is a vessel normally situated on the high seas and seamen who work both on the high seas and within the territorial zone. Defendant is the California State Labor Commissioner (Labor Commissioner). He is in charge of the Division of Labor Standards Enforcement, Department of Industrial Relations, State of California (DLSE).

The matter is before the Court on the parties' cross-motions for summary judgment. Although there is some quibbling, essentially the parties agree upon the ma-

terial facts and that only issues of law are involved.

### A. Terminology

At issue in this case is whether "seaman" can take advantage of California's overtime compensation provisions. The term "seaman" is differently defined for different purposes. General maritime law defines "seamen" broadly to include individuals whose performance on board a vessel contributes to the functioning of the vessel, accomplishment of its mission or to the operation or welfare of the vessel. *See* 46 U.S.C. § 10101(3); Norris, *The Law of Seamen*, §§ 2.1, 2.3, 2.10 (4th ed. 1985); *Norman v. Aubrey Burke & Assoc.*, 585 F.Supp. 494 (E.D.La.1984).

In contrast, the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, defines "seamen" much more narrowly for purposes of exemption from *federal* overtime provisions. 29 U.S.C. § 213(b)(6). Under the FLSA, a "seaman" is an individual who performs service "primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character." 29 C.F.R. § 783.31. For enforcement purposes, the federal Wage and Hour Administrator's position is that work of a different character is "substantial" if it occupies more than 20 percent of the time worked by an employee during any given workweek. *Id.* at § 783.37. However, the term "seaman" covers all types of crewmembers including, for example, sailors, engineers, radio operators, firemen, pursers, surgeons, cooks and stewards. *Id.* at § 783.32.

Those employees who are exempt under the FLSA will be referred to as "seamen." Those employees who fall within the general admiralty definition but not under the FLSA exemption, will be referred to as "maritime employees." However, it should be noted that all of these employees work in situations covered by admiralty law, *i.e.*, on vessels on navigable waters. *See* 14 Wright, Miller & Cooper, Federal Practice and Procedures: Jurisdiction 2d § 3671, p.

412 (cases cited therein); *In re Paradise Holdings, Inc.*, 619 F.Supp. 21, 22 (C.D.Cal. 1984),[1] *aff'd*, 795 F.2d 756 (9th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 705 (1986).

For territorial purposes, "navigable waters" are divided into three zones. The zone inland from a nation's shores is referred to as the inland or internal waters zone. These waters (*e.g.*, bays and inlets) are subject to the complete sovereignty of the coastal nation. The second zone, measured seaward from the nation's coast, is comprised of a three-mile belt known as the marginal or territorial sea. A coastal nation may exercise extensive control over the territorial zone, but cannot deny the right of innocent passage to foreign nations. The third zone lies beyond the territorial sea and is referred to as the "high seas." This zone consists of international waters that are not subject to the dominion of any nation. *See United States v. Alaska*, 422 U.S. 184, 196–97, 95 S.Ct. 2240, 2249–50, 45 L.Ed.2d 109 (1975).

Most of the rights and obligations of shipowners and seamen have been codified in 46 U.S.C. § 2101, *et. seq.* (the Shipping Act). The Act divides shipping routes into three categories—foreign, intercoastal and coastwise voyages. Foreign voyages consist of voyages between ports in different countries. 46 U.S.C. § 10301(a)(1). Intercoastal voyages consist of voyages between ports on the Atlantic and Pacific coasts. 46 U.S.C. § 10301(a)(2). Coastwide voyages consist of voyages between ports in different states (except adjoining states). 46 U.S.C. § 10501(a). In addition, the United States Coast Guard defines coastwise vessels as those "normally navigating the waters of any ocean or the Gulf of Mexico 20 nautical miles or less offshore." 46 C.F.R. § 70.10–13. *See, e.g., Sewell v. M/V Point Barrow*, 556 F.Supp. 168 (D.Alaska 1983) (seamen on vessels engaged in offshore test drilling operations on high seas employed on coastwise vessels).

---

**1.** This is a case from the District of Hawaii which is mistakenly reported as a case from the Central District of California. *See* 795 F.2d at 757.

■ The crewmembers whose claims precipitated this action were not on "voyages" that fall under any of these three categories. Their vessels either stayed on the high seas surrounding the oil rigs or "voyaged" between one port and the oil rigs. Therefore, a number of wage provisions in the Shipping Act do not apply to the affected crewmembers.

The vessels are, however, covered by a number of other Shipping Act provisions, as well as Coast Guard regulations. For example, some provisions limit the number of hours a crewmember can work to no more than 12 of 24 hours at sea and require a seagoing crew to be divided into at least two watches. 46 U.S.C. § 8104. In addition, all seamen and maritime employees are covered by a wide range of "protection and relief" statutes that govern, for example, health, taxes and attachment of wages. 46 U.S.C. §§ 11101–11112.

### B. *The Parties*

Plaintiffs Pacific Merchant Shipping Association, American Institute of Merchant Shipping, Offshore Marine Service Association and Western Oil & Gas Association are maritime trade associations that collectively represent over one hundred maritime employers, including plaintiff Clean Seas and Intervenor Tidewater Marine, Inc. The plaintiff trade associations often represent their members before local, state and federal legislative bodies, and initiate proceedings in state and federal courts to protect the interests of their members. Many of the plaintiff trade associations' members maintain business offices in California and provide maritime employment on American flag vessels to California residents, as well as to residents of other states. The maritime employers own and operate a variety of vessels registered pursuant to federal law. These vessels engage in foreign, intercoastal and coastwise voyages.

Most of the employees who are the subject of this action were or are employed by Clean Seas. Clean Seas is an unincorporated, cooperative association formed by several major oil companies. It contains and cleans up marine oil spills. It also per-

forms other maritime activities to fulfill federal environmental protection requirements. In order to perform its duties, Clean Seas operates three American flag vessels under the names of Mr. *Clean, Mr. Clean II* and *Mr. Clean III*. *Mr. Clean* and *Mr. Clean II* are "bareboat charter" vessels. *Mr. Clean III* is owned by Clean Seas. *Mr. Clean II* is a 138 foot marine vessel moored in Port San Luis Harbor, California, about one-quarter mile from the shore. It remains moored approximately 90% of the time. The owners of *Mr. Clean II* contracted with Clean Seas to provide the vessel and its operating crew, and to operate the vessel pursuant to Clean Seas needs. Most of *Mr. Clean II's* duties involve control and cleanup of oil spills and related environmental discharge control work in the Santa Barbara Channel.

*Mr. Clean III* is a 181 foot, 292 gross ton ocean-going vessel permanently stationed on the high seas over the Pedernales and Arguello oil fields on the Outer Continental Shelf.[2] These oil fields are located four to ten nautical miles off the California coast and contain four oil drilling and production platforms. Each of these platforms is located six to seven nautical miles off the California coast. Except when on active duty, *Mr. Clean III* remains tied to a buoy anchored to the seabed approximately seven nautical miles off the California coast. Since June, 1986, *Mr. Clean III* has been on station, except during two months of extended repairs, and during occasional visits to port for minor repairs, resupply or the annual Coast Guard inspections. Crewmembers assigned to *Mr. Clean III* travel by helicopter from the Santa Barbara Airport to the vessel at the beginning of their service and return via helicopter at the end.

Intervenors Tidewater Marine Service and Western Boat Operators (collectively Tidewater) provide offshore transportation and support services throughout the world and have provided crew and supply boat services to offshore oil drilling platforms off the California coast since 1964. In the Santa Barbara Channel, Tidewater provides

---

**2.** The record contains no description of *Mr.* *Clean.*

transportation services to a number of oil drilling platforms ranging in distance from one to twelve nautical miles off the coast. When a vessel is called, it goes to a pier to pick up cargo or passengers, travels to its destination (usually an offshore platform) and then returns to the pier or its mooring buoy.

The Labor Commissioner's duties include administering and enforcing compliance with many of California's labor laws, including the state's wage and hour laws. Don C. Craib (Craib), is the Senior Deputy Labor Commissioner in DLSE's Santa Barbara office. In all matters pertinent to this action, Craib is authorized to act on behalf of the Labor Commissioner.

At the base of this legal dispute lie the employees: the three crewmembers of *Mr. Clean II*[3] and nine crewmembers assigned to *Mr. Clean III*.[4] All twelve appear to be California residents in that they have California addresses. Two of the crewmembers were licensed mates and ten were certified as "seamen" by the Coast Guard; the ten worked primarily on the "clean-up" operations. Nine of those ten had written employment agreements. In February 1988, Tidewater employee Frank Kleman (Kleman), also filed a complaint for overtime compensation with the DLSE. Tidewater had employed Kleman as a "deckhand" on a crewboat from July 1, 1981, through February 2, 1986, when he took a medical leave of absence.[5]

## C. *The Factual Setting*

Although the Labor Commissioner continues to quibble over the definition of "seamen," all of the employees are either seamen or maritime employees. The parties agree that the wage claims of these crewmembers are governed by admiralty law. The issue in this case is whether California wage and hour laws should be applied as part of federal admiralty law in adjudicating the wage claims of maritime employees who work on the high seas and of seamen who work both on the high seas and within the territorial zone. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1985).

The Cal.Lab.Code empowers the Labor Commissioner and his agents to (i) investigate employee complaints concerning wages, (ii) conduct administrative hearings for the purpose of resolving wage claims, (iii) issue orders, decisions and awards, (iv) assess liability and impose monetary sanctions and penalties, and (v) prosecute actions in court to enforce California's wage and hour laws. Cal.Lab.Code § 98. Cal.Lab.Code § 1173 grants the Industrial Welfare Commission (IWC) authority to regulate the wages, hours and working conditions of those employees employed in the State of California. IWC Wage Order 4–80 covers "professional, technical, clerical, mechanical, and similar occupations." Cal.Adm.Code § 11345(2)(c). Based on his interpretation of his statutory authority, the Labor Commissioner applied Wage Order 4–80 to the crewmembers and awarded sizable overtime compensation.

The Labor Commissioner based his decision covering the crewmembers of *Mr. Clean II* on the fact that *Mr. Clean II* is moored in California's territorial waters and that a substantial part of the vessel's operation occurs within those waters. Therefore, he determined that crewmembers on *Mr. Clean II* fell under the jurisdiction of California's laws and regulations governing employer and employee relationships, and that neither the FLSA nor other maritime statutes preempt California's laws.

Prior to the hearing of *Mr. Clean III* crewmembers' individual claims, plaintiffs

---

3. William Mason, Rich Schwin and Paul Susoeff.

4. Kent Creighton, Kevin Darcy, Paul Feavel, Enrique Gutierrez, Charles Koch, Robert Jacobs, Jr., Ted Mueller, Peter Reyna and James Spencer.

5. None of these crewmembers are represented individually in this action. All have made wage claims to the Labor Commissioner. In most of these cases, awards have been made and the employers' *de novo* review is pending in state superior court. *See* Cal.Lab.Code § 98.2. Through their attorneys, they have filed an *amici curiae* brief in support of the Labor Commissioner's position.

separately challenged the Labor Commissioner's jurisdiction; that challenge was rejected. Because of that prior ruling, the decision covering *Mr. Clean III's* crewmembers does not discuss any jurisdictional issues; specifically, it makes no distinction between vessels moored one-quarter mile from shore and those moored seven miles from shore. The Labor Commissioner did determine that whether or not the wage claimants were FLSA-exempt seamen does not preclude California's authority to regulate seamen independent of any federal jurisdiction.

The Labor Commissioner has stayed all similar DLSE proceedings pending the outcome of this action, including Kleman's claims. However, in his answers to interrogatories and in Craib's deposition testimony, the Labor Commissioner discussed (hypothetically) his views of the Labor Commissioner's jurisdiction. In his deposition, Craib stated that DLSE would have jurisdiction over claims of employees on a boat stationed outside California's territorial boundaries, even if the employees were not California residents. (Ex. 109 at 124–28.) ("I'm saying that we may properly exercise jurisdiction over and adjudicate the wage claim of a non-California resident whose primary work situs is outside the territorial bounds of California ... My attorney said we have jurisdiction.")

Similarly, in his response to plaintiff's interrogatories, the Labor Commissioner claimed the right to assert jurisdiction over both non-California residents and California residents employed as seamen on a United States vessel that is permanently stationed outside the territorial boundaries of California. (Ex. 112 at 188–89.) This jurisdictional assertion was based on the fact that "[s]eaman is an inhabitant of California; and the vessel is not engaged in foreign and/or intercoastal voyages. California is exercising its police powers for the general welfare of its inhabitants."

### D. *Plaintiffs' Claims*

Although plaintiffs purport to state three separate claims for relief, all three claims raise similar arguments and, in fact, are but one and the same claim. In substance, plaintiffs claim that California labor laws conflict with federal admiralty law, place a burden on maritime commerce and represent an impermissible arrogation of power on the part of a state to extend its territorial boundaries and exercise its sovereignty over the high seas. Intervenors' claims are similar.

Plaintiffs and intervenors seek a declaratory judgment that all California wage, hours and working condition laws are inapplicable to maritime employees whose work situs is a vessel on the high seas and to all seamen, regardless of their work situs. In addition, both seek permanently to enjoin the Labor Commissioner from enforcing these state laws against them or their members.

## II. DISCUSSION

Before reaching the substance of this legal dispute, it is necessary to address two preliminary issues raised by the parties.

### A. *Jurisdiction*

■ The Labor Commissioner contends that the action should be dismissed for lack of subject matter jurisdiction. He argues that by bringing this as a declaratory judgment action, plaintiffs have not changed their preemption assertion from its essential nature as a defense. *See e.g., Miller-Wohl Co. v. Commissioner of Labor & Indus.*, 685 F.2d 1088, 1090 (9th Cir.1982) (employer's anticipation of a federal defense of preemption by Title VII of employee's state discrimination claim insufficient to provide basis for federal question jurisdiction).

The present case, however, involves a request for coercive injunctive relief, in addition to declaratory relief. In such a situation, the Supreme Court has recognized that federal question jurisdiction is appropriate:

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitu-

tion, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve. This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (citations omitted). *Accord, Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 20 n. 20, 103 S.Ct. 2841, 2852 n. 20, 77 L.Ed.2d 420 (1983) ("A person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* doctrine.").

In *Southern Pacific Transp. Co. v. Public Util. Comm'n*, 716 F.2d 1285, 1288 (9th Cir.1983), the Ninth Circuit, applying *Shaw*, held that *Miller–Wohl* applies when *only* declaratory relief is sought. When, as here, plaintiffs also seek an injunction, federal question jurisdiction is proper. *Id.*[6]

### B. *Scope of Declaratory Relief*

In their Complaint, plaintiffs request that this court adjudge "the legal rights and obligations of maritime employers with respect to their employment of seamen and/or other maritime workers on vessels normally situated on the high seas...." In addition, Tidewater seeks a ruling covering all of its seamen, regardless of their work situs. The Labor Commissioner contends that plaintiffs and intervenors seek a declaratory judgment not on matters in controversy, but rather the adjudication of a future hypothetical controversy.

The Supreme Court has spoken often on the question of whether a situation presents an Article III case or controversy:

> The difference between an abstract question and a "case or controversy" is one of degree, of course, and is not discernible

by any precise test. The basic inquiry is whether the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract."

A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough."

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citations omitted). The parties do not dispute that a real controversy exists between the Labor Commissioner and the employers of the affected crewmembers. Instead, they dispute whether the remaining plaintiffs have demonstrated a realistic danger of sustaining a direct injury as a result of the Wage Order's enforcement.

■ According to the Labor Commissioner, plaintiff's request for relief is too broad because there is no evidence that the Labor Commissioner threatens to enforce California labor laws except with regards to the "affected employees" of Clean Seas and Tidewater. The Labor Commissioner claims that he will not exercise jurisdiction over non-inhabitants; however, this representation is directly contradicted by his answers to interrogatories and Craib's deposition testimony. He is bound by the latter. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir.1975) (party may not create issue of fact on a summary judgment motion by contradicting his own deposition). He also maintains that no evidence suggests that workers employed by other members of the plaintiff associations are affected by his overtime awards to

---

**6.** Because the court has subject matter jurisdiction of this dispute under 28 U.S.C. § 1331, as one arising under the Constitution, it need not address the question of whether, nevertheless, it would have subject matter jurisdiction under 28 U.S.C. § 1333(1), as a case arising under its admiralty and maritime jurisdiction. *See U.S.*

*Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (seaman's suit for wages is within admiralty jurisdiction); *Putnam v. Lower*, 236 F.2d 561, 570 (9th Cir.1956) ("jurisdiction of courts of admiralty over the wage claims of seamen is anciently established").

Clean Seas' employees; thus, that any relief should be narrowly tailored.

Although this contention is not without merit, the argument goes too far. The rights of three other groups are directly at stake. The first group consists of the remaining crewmembers of *Mr. Clean III*, at least some of whom would be eligible to bring similar claims for overtime compensation. Further, *Mr. Clean III* still employs seven of the nine employees who were awarded overtime by the Labor Commissioner. Therefore, Clean Seas faces additional liability. Tidewater also faces similar, potential liability from its remaining crewmembers.

The second group is employers with a direct stake in the outcome of this litigation and includes those members of the plaintiff associations who employ seamen or other maritime employees on vessels on the high seas, but which do not engage in foreign or intercoastal voyages. Plaintiffs maintain that their members operate vessels, similar to those used by Clean Seas, on the high seas, that are not engaged in foreign or intercoastal voyages. The third group affected by this litigation is those employers that have seamen, like Kleman, working within the territorial zone.[7]

Plaintiffs also challenge a broader group of statutory provisions than the Labor Commissioner has attempted so far to apply. The Labor Commissioner has applied California's overtime compensation provision, specifically IWC Wage Order 4–80, to seamen and maritime employees. In applying this Wage Order, he has also invoked a number of statutory provisions covering other wage and hour requirements. *E.g.,* Cal.Lab.Code §§ 200 (definitions), 201 (time for payment upon discharge), 203 (penalty for failure to make payment at required time), 204 (requirement of semimonthly payment), 226 (itemized statement of wages). Clearly, the Court can determine whether application of those provisions was proper. However, plaintiffs request that the Court determine the applicability of "all

other provisions of California wage and hour law." The Labor Commissioner contends that there is no evidence that he will seek to enforce any other provisions of the Wage Order other than the overtime provision. The Court agrees; consequently, it will limit its review to the overtime provisions only and to any other wage and hour provisions intertwined with the overtime compensation provision.

### C. *Does Maritime Law Preempt State Law*

■ Both sides recognize the need for uniform regulation under admiralty law. *Norris, supra,* § 1.3, p. 4–5, *citing Panama R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Therefore, state laws which conflict with maritime law cannot be enforced. *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 217, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917); *Daughtry v. Diamond M Co.,* 693 F.Supp. 856, 861 (C.D.Cal.1988). However, state laws that do not conflict may be incorporated into admiralty law and applied. 14 Wright & Miller, Federal Practice & Procedure: Jurisdiction 2d § 3671, pp. 421–422 (state law may not be applied to prejudice the characteristic features of maritime law or to disrupt the harmony it strives to bring to international and interstate relations); *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 341–42, 93 S.Ct. 1590, 1600, 36 L.Ed.2d 280 (1973). Although a number of federal provisions do cover the overtime wages of seamen on a variety of voyages, no federal maritime law *expressly* addresses the overtime pay of the seamen and other maritime workers such as those involved in the case at bench. Because of this absence of express federal provision, the Labor Commissioner contends that California labor laws do not conflict with federal law and are thus not preempted.

Plaintiffs' response is two-fold: First, although no federal maritime statute expressly addresses overtime compensation for the seamen and maritime employees involved in this action, the Shipping Act

---

**7.** Because Tidewater contends that all of its employees are seamen, with respect to the territorial zone, this decision affects only seamen and

does not determine the rights of maritime employees working within that zone. That decision must await another day.

does govern other aspects of these employees' wages, hours and working conditions. Plaintiffs cannot, however, find safe harbor in this Act; defendant's exercise of jurisdiction conflicts directly with only one of its provisions. (When a seaman's wages must be paid. *Compare* 46 U.S.C. § 10313, *with* Cal.Lab.Code § 204.) In light of the general exemption of coastwise vessels *not* engaged on coastwise voyages from the comprehensive "burdensome requirements" of the Shipping Act, this one conflict does not seem sufficient to preempt California's overtime laws. *Inter-Island Steam Nav. Co. v. Byrne,* 239 U.S. 459, 462–63, 36 S.Ct. 132, 133–34, 60 L.Ed. 382 (1915).[8] Maritime statutes simply do not purport to govern the overtime wages of employees such as those in this action.

### 1. FLSA v. State

Plaintiffs next contend that, to the extent that seamen or maritime employees are not covered by federal maritime statutes, they are covered by the FLSA. This argument is much more persuasive.

Section 207(a) of the FLSA provides overtime pay for employees who are engaged in "commerce or in the production of goods for commerce." Although neither side cites any evidence that the maritime employees here fall under the FLSA, it appears that the employees are tied closely enough to commerce (oil production) such that they are covered by the FLSA. *Wirtz v. Intravaia,* 375 F.2d 62, 65 (9th Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110 (1967); *see also* 29 U.S.C. § 206(4) (expressly applying minimum wage to seamen); Friedell, *Benedict on Admiralty,* ¶ 104, pp. 7–6.

The FLSA constitutes a comprehensive, uniform and national system of wage and hour regulation. It provides maritime employers and employees with a uniform legal standard by which to ascertain their legal rights and obligations. It specifically exempts maritime workers, *i.e.,* seamen who

are engaged primarily in the operation of a vessel. Further, the California overtime provisions and the FLSA provisions produce widely differing results. Plaintiffs contend that these conflicts establish that the FLSA preempts California labor provisions. In fact, the Labor Commissioner concedes that the FLSA would preempt state law, were it not for the FLSA's savings clause, 29 U.S.C. § 218(a).

### 2. The FLSA Savings Clause

■ The savings clause provides:

"No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter...."

29 U.S.C. § 218(a). According to the Labor Commissioner, this savings clause expressly permits California to apply its overtime provisions (which are admittedly more generous) to those nonexempt maritime employees who qualify under the FLSA.

■ However, the FLSA's savings clause cannot properly be construed to save state laws that seek to regulate the employment of maritime employees whose work situs is a vessel normally situated on the high seas. This is so because Congress may not constitutionally delegate its maritime jurisdiction to the states. *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); *see also Perez De La Cruz v. Crowley Towing & Transp. Co.,* 807 F.2d 1084, 1088 (1st Cir. 1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987) (Congress cannot delegate its maritime jurisdiction to the states, but can delegate it to Puerto Rico). Such a delegation would destroy the harmony and uniformity of admiralty law established by the Constitution. *Knicker-*

---

**8.** *See, also M/V Point Barrow,* 556 F.Supp. at 170 (Alaska statute assessing employers' penalty of up to ninety days of wages for failure to comply with proper demand for payment compatible with federal maritime law governing seamen's wage claims; deletion of penalty from federal law "reflected congressional recognition that it would be impractical to apply the elaborate scheme of the Shipping Commissioners Act to all vessels engaged in coastwise trade").

*bocker,* 253 U.S. at 164, 40 S.Ct. at 441. Thus, under compulsion of the Constitution, the savings clause must be interpreted as not applying to maritime employees employed primarily on the high seas.

Although this argument lacks direct precedential support, common sense suggests that the uniformity of federal admiralty law would be destroyed if the states were permitted to "add on" to the federal law enacted by Congress. The maritime employees (and their employers) involved in the present action fall in the interstices between express federal maritime statutes. Nonetheless, because they are maritime employees and therefore subject to admiralty jurisdiction, they must be subject to uniform federal law. Therefore, California cannot apply its laws under the savings clause to destroy the nationwide uniformity of admiralty law.

This limiting construction of the FLSA's savings clause is similar to and consistent with the Supreme Court's limiting construction of the savings clause in the National Labor Relations Act (NLRA), 29 U.S.C. § 164(b). In *Oil, Chem. & Atomic Workers, Int'l Union, AFL–CIO v. Mobil Oil Corp.,* 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976), the Court adopted a "predominant job situs" test to determine when the NLRA's savings clause permits application of state "right-to-work" laws. Because the employees in *Mobil Oil* mostly worked on the high seas (outside the territorial bounds of the State of Texas), the Court held that Texas' right-to-work laws could not be applied to govern the agency-shop provision at issue. "It is therefore fully consistent with national labor policy to conclude, if the predominant job situs is outside the boundary of any State, that no State has a sufficient interest in the employment relationship and that no State's right-to-work laws can apply." *Id.* at 420–21, 96 S.Ct. at 2147.

*Mobil Oil* strongly suggests that the FLSA's savings clause should be limited so that California cannot apply its overtime provisions to employees whose predominant job situs is on the high seas, outside the territorial bounds of California. *See*

*also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 223–229, 106 S.Ct. 2485, 2495–2499, 91 L.Ed.2d 174 (1986) (Death on the High Seas Act precludes application of state's wrongful death statute to accidents on the high seas *despite* savings clause preserving state statutory rights and remedies. "[W]e must infer that if Representative Mann and his colleagues intended affirmatively to require enforcement of state substantive law on the high seas, they would have taken care to make that requirement explicit.").

### 3. FLSA Exempt Seamen

 Under the FLSA, seamen are exempt from federal overtime provisions. 29 U.S.C. § 213(b)(6). Federal law clearly preempts state law within the territorial zone if that state law conflicts with federal law. *See, e.g., Chevron U.S.A. Inc. v. Hammond,* 1980 A.M.C. 2416 (D. Alaska 1979). Congress has spoken directly on the issue of overtime pay for seamen. Therefore, California labor laws are preempted to the extent that they presume to regulate FLSA exempt seamen, both on the high seas and within the territorial zone. Further, given Congress' exemption of these seamen from even minimal federal overtime provisions, it would be at odds with the federal scheme to permit the states to enforce stricter overtime provisions via the FLSA's savings clause.

### D. *Supremacy Clause Preemption*

Plaintiffs next contend that California's wage and hours laws are preempted by the Supremacy Clause because California cannot extend its territorial boundaries and exercise sovereignty over the high seas. Basically, they argue that by asserting jurisdiction over employment on the high seas, defendant has "enlarged" its territorial boundaries into areas within exclusive federal sovereignty. The Labor Commissioner has not responded to this argument. It is, however, no more than a variation of the arguments discussed above, and so, needs no separate elaboration.

# 1526

### E. *Interstate Commerce*

Plaintiffs' final argument is that application of California's overtime provisions to vessels on the high seas places an unconstitutional burden on interstate and maritime commerce. This is but another variation on the theme discussed above. Plaintiffs contend that maritime employment on the high seas is so national in nature as to permit only one uniform system of regulation. Therefore, that any state law that intrudes on this area is preempted under the Supremacy Clause. While it does appear that California's "police power" interest is weak, in light of the need for uniform law governing employees on the high seas, the Court need not reach this commerce clause argument.

## III. CONCLUSION

In light of the obvious conflict between California's overtime compensation provision and the FLSA, the FLSA preempts California's provisions. Therefore, California cannot apply its wage and hour provisions to seamen or to maritime employees employed primarily on the high seas. Plaintiffs' and intervenors' request for declaratory and injunctive relief is granted. However, the scope of the relief is limited to (i) the FLSA-exempt seamen, whether working within the territorial zone or on the high seas, and (ii) maritime employees working primarily on vessels on the high seas that are not engaged in foreign or intercoastal voyages.

## DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

In accordance with the Memorandum Opinion, signed and filed concurrently herewith,

IT IS ADJUDGED AND DECLARED that the provisions of California state law (statutes, regulations and orders) with respect to overtime pay of employees, and related enforcement provisions, may not be enforced or applied to seamen employees of plaintiffs' members and intervenors or to maritime employees of plaintiffs' members and intervenors who are employed primarily on the high seas. Such enforcement and application is inconsistent with and conflicts with the Fair Labor Standards Act and exclusive federal jurisdiction of admiralty and maritime law; therefore, state regulation of the same is preempted by the Supremacy Clause of the Constitution.

IT IS ORDERED AND ADJUDGED that defendant Lloyd W. Aubry, Jr., as Labor Commissioner of the State of California, his agents and successors, are permanently enjoined from applying or enforcing any provision of California law (statutes, regulations and orders) with respect to overtime pay of employees to seamen employees of plaintiffs' members and intervenors and to maritime employees of plaintiffs' members and intervenors who are employed primarily on the high seas.

FURTHER ORDERED that plaintiffs and intervenors shall recover their costs of suit in the sum of $_____.