Jason McMICHAEL, et al., Plaintiffs,

v.

FALLS CITY TOWING COMPANY, et al., Defendants.

Civil Action No. 3:01CV–278–H.

United States District Court,
W.D. Kentucky,
at Louisville.

May 2, 2002.

Dennis M. O'Bryan, O'Bryan Baun Cohen Kuebler, Birmingham, MI, for Plaintiffs.

Dana E. Deering, Parry, Deering, Futscher & Sparks, Covington, KY, for Bray Marine.

W. Scott Miller, Jr., Stephanie R. Miller, Miller & Miller, Louisville, KY, for Falls City Towing.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiffs, deck hands on harbor boats that traverse the Ohio River between Kentucky and Indiana, filed this action in federal court seeking overtime compensation under Kentucky's overtime wage law, KRS § 337.285.[1] The case comes to federal court in an unusual context. The Kentucky Labor Cabinet, which is responsible for administering the wage and hour laws, has determined not to apply or enforce KRS § 337.285 as to seamen such as Plaintiffs. *Operations Handbook of the Employment Standards Division of the Kentucky Labor Cabinet,* Section 5e.[2] Normally one would go to state court to seek enforcement of a state statute. However, the Cabinet's hostility to this remedy may be the reason that Plaintiffs brought

---

1. Plaintiff Richard Carden no longer works for Defendant Bray Marine, Inc. He seeks payment of overtime wages earned during his employment from July to November 1999.

2. The Labor Cabinet is not a party to this action. The defendants are Plaintiffs' employers, operators of the harbor boats. Defendants concur in the Cabinet's determination not to apply KRS § 337.285 to seamen, arguing that the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* preempts KRS § 337.285 as it applies to seamen because the Act specifically exempts "any employee employed as a seaman" from its own overtime wage provisions. 29 U.S.C. § 213(b)(6). Therefore, Defendants contend, KRS § 337.285 cannot apply to seamen.

their claims in federal court. Regardless, in doing so, they have created a jurisdictional quandary which subsumes the substantive issues in the case.

The jurisdictional issues rise to the forefront because the parties in this action are not diverse, and Plaintiffs do not state a claim arising under the Constitution, laws or treaties of the United States. Thus, this Court may hear this case only under its admiralty jurisdiction. *See* 28 U.S.C. §§ 1331–33. For the reasons that follow, the Court concludes that this action is not a case of admiralty jurisdiction within the meaning of Article III, Section 2 of the Constitution and 28 U.S.C. § 1333, and consequently must be dismissed for lack of subject matter jurisdiction. Additionally, the Court observes that Kentucky law limits the ability of this Court—indeed, any court—to fashion a remedy under KRS § 337.285.

Both sides have moved for summary judgment and submitted excellent memoranda.

### I.

■ The Constitution extends federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Congress has vested federal district courts with original jurisdiction over all civil admiralty and maritime cases. *See* 28 U.S.C. § 1333(1). However, admiralty is a limited jurisdiction, and not every claim comes within its reach merely because of some attenuated connection to travel upon the water. *See, e.g., Atlantic Transport Co. v. Imbrovek*, 234 U.S. 52,

60–61, 34 S.Ct. 733, 58 L.Ed. 1208 (1914) (questioning whether maritime jurisdiction would extend to a suit for defamation which occurred on a ship).

■ Admiralty jurisdiction is a somewhat nebulous concept, and its "precise scope ... is not a matter of obvious principle or of very accurate history." *Id.* at 61, 34 S.Ct. 733 (quotation marks, citation omitted). The Framers of the Constitution, mindful of English and colonial common law precedent, intended federal admiralty law to "embod[y] the principles of the general maritime law, sometimes called the law of the sea, with modifications and supplements adjusting it to conditions and needs on this side of the Atlantic." *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 386, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Congress may modify and supplement admiralty law, and clarify, if not dramatically alter, the boundaries of admiralty jurisdiction. *See id.* Typically, it alters these boundaries in two ways: indirectly, by creating maritime causes of action, *see, e. g.,* 46 U.S.C. Appx. § 10313 (Seaman's Wage Act);[3] or directly, by extending admiralty jurisdiction to common law claims, *see, e. g.,* 46 U.S.C. Appx. § 740 (Admiralty Extension Act). Historically, the principal subjects of admiralty jurisdiction have been maritime contracts and maritime torts. *See The Belfast*, 74 U.S. 624, 637, 7 Wall. 624, 19 L.Ed. 266 (1868). Specifically, admiralty courts may hear maritime contract disputes, and tort actions in which injury occurred on navigable waters, even if those claims are stated in state tort law.

---

3. The Seaman's Wage Act provides a federal cause of action for seamen to recover unpaid wages. It is inapposite here because it offers a remedy for breach of a maritime contract, not for violation of a duty under state law to pay overtime wages. *See The Steel Trader*, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326 (1928). Consequently, cases such as *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), and *Putnam v. Lower*, 236 F.2d 561 (9th Cir.1956), do not stand for the proposition that admiralty jurisdiction exists as to all questions concerning seamen's wages. Other courts seem to have relied upon these cases for the general proposition that admiralty jurisdiction extends to wage cases generally. *See infra* note 5. These cases do not support such a view.

*See Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Our case does not fit within any of these criteria.

Admiralty jurisdiction over state *labor* law claims is, at best, uncertain. Outside the tort context, courts have been reluctant to find admiralty jurisdiction in cases where interpretation of a state statute is necessary for resolution. For example, in *Temple Drilling Co. v. Louisiana Ins. Guar. Ass'n,* 946 F.2d 390 (5th Cir.1991), the Fifth Circuit Court of Appeals vacated the decision of the court below after concluding that it had lacked subject matter jurisdiction to hear an insurance indemnification case. Because resolution turned on interpretation of Louisiana insurance law rather than the maritime contract itself, the Court found that admiralty jurisdiction had been improper. *Id.* at 395. Relying on *Temple Drilling,* a district court in *Marina Entertainment Complex, Inc. v. Hammond Port Authority,* 842 F.Supp. 367 (N.D.Ind.1994), dismissed an action for lack of jurisdiction although it involved a contract to lease a vessel on navigable waters. The central issue had been not the proper interpretation of the lease, but rather of an Indiana statute which governed the contract for the lease. *See id.* at 369–70. In the instant case, too, the controlling issue is not the interpretation of any maritime contract, but rather the application of a state statute which establishes certain rights and duties.[4]

Plaintiffs bear the burden of establishing this Court's subject matter jurisdiction over their claim. *See Whittle v. United States,* 7 F.3d 1259, 1262 (6th Cir. 1993). Their complaint does not state a basis for federal jurisdiction. It merely contains a statement identifying it as one in admiralty under Federal Rule of Civil Procedure 9(h), and a declaration, in anticipation of Defendants' counter-argument, that federal maritime law does not preempt KRS § 337.285 as applied to seamen. However, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Plaintiffs have not persuaded the Court that their claims, as pleaded together with Defendants' assertion of the Fair Labor Standards Act as a defense, create jurisdiction in these circumstances.[5]

The unusual context here creates the admiralty version of a "Catch–22." However, the particular nature and context of Plaintiffs' claim is primarily responsible for this quandary and, in the final analysis, Plaintiffs' claim of admiralty jurisdiction cannot withstand scrutiny. The presump-

---

**4.** The circumstances and the specific issues involved in *Temple Drilling* seem more attenuated from admiralty than those in our case. The wages of seamen are more directly related to maritime work and economy than a general insurance statute. The federal government could have a legitimate interest in either regulating seamen's wages or conferring admiralty jurisdiction over controversies concerning those wages.

**5.** The Court is aware that other district courts have recently considered similar issues and have found admiralty jurisdiction. *See Chrisman v. Caseyville Harbor Services, Inc.,* 4:01CV–81–M (W.D.Ky. Mar. 25, 2002); *Coil*

*v. Jack Towing Co.,* 3:00CV686–DRH* (S.D.Ill. Feb. 20, 2002); *Price v. Ashland, Inc.,* 2000 WL 33640135 (E.D.Ky. Nov.28, 2000). Clearly, the precise scope of admiralty jurisdiction is a topic of ongoing discussion. This Court would add only that reliance upon the Seaman's Wage Act cases, such as *Putnam* and *Arguelles,* to support jurisdiction here goes beyond the meaning of those cases. *See supra* note 3. In addition, these courts seem strongly persuaded by the policy of maintaining uniformity in maritime law. Such a policy may well inform the interpretation of a statute; however, the need for uniformity cannot be a basis for asserting admiralty jurisdiction in the absence of some other substantial basis.

tive basis for admiralty jurisdiction over their claim is that the Fair Labor Standards Act, as applied to seamen, preempts state regulation in that arena. That Act is not a maritime statute, nor does it create maritime jurisdiction. Nevertheless, should it preempt state laws such as KRS § 337.285 that would otherwise regulate seamen's wages, then Plaintiffs would be without a remedy under state law. On the other hand, if the Act does not preempt, then Plaintiffs are without an argument that Congress has created admiralty jurisdiction by preempting the field. Under either scenario, the Court can see no grounds for admiralty jurisdiction as to Plaintiffs' state law claims in these circumstances.

This is not to say that a court may not consider the issue whether federal maritime law—or, for that matter, any federal law—bars the states from regulating the wages of seamen. The court in *Pacific Merchant Shipping Ass'n v. Aubry,* 709 F.Supp. 1516 (C.D.Cal.1989), *rev'd on other grounds,* 918 F.2d 1409 (9th Cir.1990), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992), addressed this very question. Jurisdiction in *Aubry,* however, was premised upon a federal question, not upon admiralty. The plaintiff shipping companies sought federal injunctive relief on the grounds that the Fair Labor Standards Act preempted California wage and hour law as applied to seamen. *See* 709 F.Supp. at 1521–22. The district court noted that the existence of federal question jurisdiction permitted it to sidestep the question whether admiralty jurisdiction existed. *See id.* at 1522, n. 6. A few years later, in *Fuller v. Golden Age Fisheries,* 14 F.3d 1405 (9th Cir.1994), the Ninth Circuit noted admiralty jurisdiction where plaintiffs made a Seaman's Wage Act claim for unpaid wages. Apparently, the Court considered the plaintiffs' state wage and hour law claims under its supplemental jurisdiction, though the Court did not discuss it. In the instant case, had Plaintiffs also claimed breach of a maritime wage contract, or had Defendants brought suit to enjoin the Labor Cabinet from enforcing KRS § 337.285 as to seamen, or, if after Plaintiffs filed suit, Defendants had counterclaimed with a request for injunctive relief, this Court would have jurisdiction over the KRS § 337.285 claims. Needless to say, those are not our present circumstances.

## II.

Even if this Court had jurisdiction to hear Plaintiffs' claims, it is doubtful that the Court could grant them the remedy they seek. The General Assembly of the Commonwealth of Kentucky has limited jurisdiction over enforcement of KRS 337.285. KRS § 337.310, as amended in 1996, states that:

All orders or decisions of the secretary [of the Labor Cabinet] issued or made under KRS 337.020 to 337.405 may be appealed, and upon appeal an administrative hearing shall be conducted in accordance with KRS Chapter 13B.

Before that 1996 amendment, the statute read as follows:

(1) All questions of fact arising under KRS 337.020 to 337.405 except as provided in this section, shall be decided by the secretary. There shall be no appeal from the decision of the secretary on any question of fact, but there shall be a right of review by the circuit court. Either party may, within twenty (20) days after the rendition of a final order of the secretary, by petition appeal to the circuit court that would have jurisdiction to try an action for breach of contract.

(2) The review is limited to determining whether or not:

(a) The secretary or director acted without or in excess of his powers;

(b) The order or decision was procured by fraud;

(c) The order or decision is not in conformity to the provisions of KRS 337.020 to 337.405; and

(d) If findings of fact are in issue, whether they support the order or decision.

(3) The circuit court shall enter judgment affirming, modifying or setting aside the order or decision.

Before the 1996 amendment, the Kentucky Court of Appeals found in *Early v. Campbell County Fiscal Court*, 690 S.W.2d 398 (Ky.Ct.App.1985), that the statute granted to the Labor Cabinet original jurisdiction over unpaid wage claims, even though KRS § 337.385(1) states that an action for unpaid wages under KRS § 337.285 "may be maintained in any court of competent jurisdiction." The subsequent decision in *Noel v. Season–Sash, Inc.*, 722 S.W.2d 901 (Ky.Ct.App.1986), preserved this holding, but limited it to those cases in which the obligation to pay wages arises from an employer's statutory duty under KRS § 337.285, not from the contract between employer and employee. These cases establish the straightforward proposition that an employee must assert any statutory wage and hour disputes with the Secretary of the Labor Cabinet before filing suit in any court.

Plaintiffs argue that the 1996 amendment eviscerated *Early*, thus placing original jurisdiction in Kentucky's state and federal courts. In *Hasken v. City of Louisville*, 173 F.Supp.2d 654 (W.D.Ky. 2001), Judge Charles Simpson rejected that argument. He noted the 1996 amendment but held that "only the process by which an appeal is made was altered," and that *Early* and *Noel* are still good law. He then dismissed claims asserted under KRS Chapter 337 which had not previously been brought administratively. *See id.* at 662. This Court agrees with Judge Simpson's analysis: the 1996 amendments to Kentucky's wage and hour laws did not affect the *Early* or *Noel* decisions in any manner.

Therefore, as further explained in *Early* and *Noel*, Plaintiffs must bring their claims under KRS Chapter 337 to the Commonwealth's Labor Secretary. This Court should not hear a claim based on that statute. This Court cannot fashion the remedy which Plaintiffs seek.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

All parties in this action have moved for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment are SUSTAINED, and Plaintiffs' complaint is DISMISSED for lack of jurisdiction.

This is a final and appealable order.