TEMPLE DRILLING CO., et al., Plaintiffs–Appellees,

v.

LOUISIANA INSURANCE GUARANTY ASSOCIATION, Defendant–Appellant.

No. 90–4458.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1991.

---

**36.** *Id.,* at 640, 107 S.Ct. at 3039. **37.** *Id.*

Thomas E. Balhoff, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, La., for defendant-appellant.

D.C. Panagiotis, Edwin G. Preis, Jr., Preis, Kraft, Laborde & Diagle, Lafayette, La., for plaintiffs-appellees.

Before KING and JONES, Circuit Judges.*

KING, Circuit Judge:

The Louisiana Insurance Guaranty Association ("LIGA") appeals from a judgment by the district court in favor of Temple Drilling Company ("Temple Drilling") in the amount of $332,772.10, as indemnification for amounts paid by Temple Drilling to injured seamen when its insurer became insolvent. Finding that the district court did not have subject matter jurisdiction over this action, we vacate the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Temple Drilling was the owner or operator of several movable drilling rigs stationed off the coasts of Texas and Louisiana in the Gulf of Mexico. Several personal injury lawsuits were filed against Temple Drilling by employees or third parties arising out of accidents which occurred on or in connection with these rigs. These lawsuits generally involved one or more causes of action under the Jones Act, Section 905(b) of the Longshore and Harbor Worker's Act, or the general maritime law.

During the time period between May 21, 1981 and June 30, 1984, Temple Drilling was insured by Ideal Mutual Insurance Company ("Ideal"), a New York corporation. Ideal was declared insolvent on February 7, 1985. Ideal was a "member insurer" of LIGA within the meaning of Louisiana Revised Statutes § 22:1379(5). The insurance policies on which suits were brought during this time period were standard worker's compensation and employers' liability ("WC/EL") policies, excess liability policies, and specific excess worker's compensation reinsurance agreements.

After the demise of Ideal, Temple Drilling undertook its own defense of the actions pending against it. Temple Drilling was forced to pay judgments as to some plaintiffs and reached settlement with many others. Temple Drilling filed the instant action in federal district court against LIGA on April 15, 1987, seeking to recover $1,088,574.16, which represented the total amount it had paid to those plaintiffs who were Louisiana residents in the actions pending against it, and which would have been covered under the WC/EL and excess insurance policies issued by Ideal. When the district court found that LIGA's statutory limit of $49,900 applied to each claim, Temple Drilling sought instead to recover the amount of $332,772.10 from LIGA. As its basis for jurisdiction in federal court, Temple Drilling alleged diversity of citizenship.

---

* Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

One of the arguments made by LIGA below was that Temple Drilling was required to pursue its right to recover from the Texas Insurance Guaranty Association ("TIGA") before attempting to recover from LIGA pursuant to Louisiana Revised Statutes § 22:1386(2). Temple Drilling argued that it had complied with the requirement of that section, based on a letter/claim, a proof of claim form, and a follow-up letter/claim sent to TIGA, all dated between January 8 and January 13, 1986. TIGA's bar date for submission of claims under Ideal policies was January 14, 1986. Somewhat belatedly, on July 24, 1989, TIGA denied Temple Drilling's claim on the basis of improper documentation. Temple Drilling subsequently filed suit against TIGA, and that action is currently ongoing in Texas.

LIGA also argued that no "covered claim" existed under the LIGA Statute. Louisiana Revised Statutes § 22:1377 expressly excludes from coverage under LIGA claims based upon "ocean marine insurance." In the district court, LIGA argued that the WC/EL policies were ocean marine insurance and therefore not covered under LIGA.

During a telephone conference call between the district court and counsel, counsel for LIGA brought to the court's attention two decisions [1] suggesting that the court did not have subject matter jurisdiction based on diversity of citizenship. Nevertheless, the district court determined that, in view of the lengthy delay in this action, it would proceed to decide the case on the merits. According to a letter to counsel, written by the district court,

> We have reviewed the *Rhulen* case ... and believed that its rationale would support a dismissal of our case on jurisdictional grounds.
>
> [However], I will proceed to decide the case on the merits—noting the jurisdictional problem.

In its March 23, 1990 decision, the district court rejected LIGA's assertion that there was no "covered claim," finding that the WC/EL policies were not ocean marine insurance. The district court also found that LIGA was not entitled to an offset equal to the limits of TIGA coverage. The court ruled in favor of Temple Drilling against LIGA in the amount of $332,772.10, plus interest and costs. The court acknowledged that it had an obligation to address the jurisdictional issue, but chose not to do so because it felt "the fairest thing to do at this late date is to proceed and decide the case on the merits."

On March 23, 1990, LIGA filed a motion to vacate the district court's decision and to dismiss for lack of subject matter jurisdiction. Temple Drilling then filed an amended complaint, with the approval of the district court, in which it pleaded admiralty jurisdiction under 28 U.S.C. § 1333 as an additional basis for federal court jurisdiction.

Contemporaneously, the Fifth Circuit decided the issue of whether or not LIGA is entitled to an offset for any judgment an insured may obtain against a foreign insurance guaranty association. *See Sifers v. General Marine Catering Co.*, 897 F.2d 1288 (5th Cir.1988) (*"Sifers II"*). In response to *Sifers II*, LIGA filed a motion for reconsideration on the offset issue as to whether it was entitled to credit for the amount which might have been recovered by Temple Drilling had its claim against TIGA been supported by adequate documentation.

On June 4, 1990, the district court issued a memorandum ruling holding that the original decision was correct, and that Temple Drilling had adequately fulfilled LIGA's requirement that it first pursue recovery from TIGA. A final judgment was signed by the district court on June 7, 1990, and on June 18, 1990, LIGA timely filed notice of appeal.

On appeal, LIGA argues that the district court erred on three grounds: (1) the district court did not have subject matter jurisdiction over this action based on either diversity of citizenship or admiralty; (2) Temple Drilling's claim against LIGA was

---

1. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Rhulen Agency v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir.1990).

not a "covered claim" under the LIGA statute; and (3) LIGA was entitled to an offset for the amount Temple Drilling could have recovered against TIGA had its filing with TIGA been properly documented. We recognize the good intentions of the district court, and sympathize with the parties that this matter has been pending for a great while in the federal courts. However, because we find that the district court did not have subject matter jurisdiction over this action based on either diversity of citizenship or admiralty, we vacate the decision below. We therefore need not address LIGA's other contentions.

## II. DISCUSSION

LIGA contends that the district court lacked subject matter jurisdiction in this action. Temple Drilling maintains that jurisdiction is based on diversity of citizenship, or alternatively, in admiralty.

### A. *Diversity of Citizenship*

For subject matter jurisdiction based on diversity of citizenship, diversity must be complete. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Temple Drilling is a Texas corporation, with its principal office and place of business in Houston, Texas. Texas is therefore Temple Drilling's residence for diversity purposes. LIGA is an unincorporated association of member insurers created pursuant to Louisiana Revised Statutes § 22:1380.

In *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990), the Supreme Court held that, with the exception of corporations, the citizenship of an artificial entity for purposes of diversity is the citizenship of each of the entity's constituent members. Temple Drilling attempts to distinguish *Carden* on the ground that the Supreme Court addressed therein only the citizenship of *voluntarily* formed artificial entities. *Carden,* argues Temple Drilling, does not control here because membership in LIGA is *involuntary,* and a mandatory condition of doing business in Louisiana. Under Louisiana Revised Statutes § 22:1379(5),

A 'member insurer' means any person who (a) writes any kind of insurance to which this part applies under R.S. 22:1377, including the exchange of reciprocal or enter insurance contracts and (b) is licensed to transact insurance in this state.

As characterized by Temple Drilling, LIGA members pay what is essentially an involuntary tax for the privilege of doing business in Louisiana, but benefit in no way from the existence of LIGA. Members do not participate in the profits of LIGA, nor can they participate as parties to this action simply by virtue of their membership. Indeed, unlike a voluntary "association" or "partnership," as contemplated by the Court in *Carden,* members have virtually no interest in the outcome of this litigation.

Without ruling as to this characterization of LIGA by Temple Drilling, we see no reason to interpret the Supreme Court's holding in *Carden* as limited to voluntarily formed entities. As the Court stated:

The fifty States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.

110 S.Ct. at 1021–22.

Temple Drilling correctly points out that there is one exception to the "general rule" enunciated in *Carden.* In *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), the Supreme Court held that an unincorporated entity known as a *sociedad en comandita,* created under the civil law of Puerto Rico, could be treat-

ed as a citizen of Puerto Rico for purposes of determining federal court jurisdiction. Temple Drilling argues that the outcome of *Russell* reflects the Court's willingness to look behind the incorporated/unincorporated dichotomy, at least in some cases, to determine diversity of citizenship. The Supreme Court rejected this precise argument in *Carden,* stating that "common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita* )" should be treated for purposes of the diversity statute pursuant to what *Russell* called " '[t]he tradition of the common law,' which is 'to treat as legal persons only incorporated groups and to assimilate all others to partnerships.' " 110 S.Ct. at 1018 (quoting *Russell,* 288 U.S. at 480, 53 S.Ct. at 448).

In *Rhulen Agency v. Alabama Insurance Guaranty Association,* 896 F.2d 674, 677 (2d Cir.1990), the Second Circuit interpreted this rule to include state insurance guaranty associations, holding that they have the same citizenship for diversity purposes as each of their members. " 'For purposes of diversity jurisdiction, an unincorporated association is said to have no citizenship of its own. Thus, if suit is brought by or against an association as an entity ..., the organization's citizenship is deemed to be the same as that of its members.' " *Id.* (citing 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1861, at 217 (1986)). Diversity was defeated in *Rhulen* because "at least one insurance company member of each [defendant] Guaranty Association is a citizen of [the plaintiff's state]." *Id.*

Temple Drilling argues that we should disregard *Rhulen* because it is not controlling in this circuit. On the contrary, we

find the reasoning of *Rhulen* persuasive, and hold that, in light of *Carden,* LIGA has the citizenship for diversity purposes of each of its constituent member insurers. *Accord Iowa Ins. Guar. Ass'n v. New England Ins. Co.,* 701 F.Supp. 177, 178–79 (S.D.Iowa 1988); *Independent Pier Co. v. Pennsylvania Ins. Guar. Ass'n,* No. 88–3467, 1988 WL 92171, at 5 n. 5 (E.D.Pa. 1988); *International Ins. Co. v. Virginia Ins. Guar. Ass'n,* 649 F.Supp. 58, 61 (E.D.Va.1986); *Trombino v. Transit Casualty Co.,* 110 F.R.D. 139, 144 (D.R.I.1986).

In this case it is undisputed that LIGA has member insurers that are citizens of Texas. Temple Drilling, for purposes of diversity jurisdiction, is a citizen of Texas. Diversity of citizenship therefore cannot form the basis of subject matter jurisdiction in this action.

### B. *Admiralty*

 Faced with the challenge posed by *Carden* and *Rhulen,* Temple Drilling alternatively alleges admiralty as a basis for federal court jurisdiction. Federal courts have exclusive jurisdiction over claims under the general maritime law. 28 U.S.C. § 1333.[2] Admiralty jurisdiction is properly invoked in suits on contracts for marine insurance.[3] *Offshore Logistics Servs., Inc. v. Mutual Marine Office,* 639 F.2d 1168, 1170 (5th Cir. Unit A 1981); *International Sea Food Ltd. v. M/V Compeche,* 566 F.2d 482, 483 (5th Cir.1978). The parties spent a great deal of time briefing the issue of whether the underlying WC/EL policies are marine insurance. The cases brought to our attention by the parties focus on whether the underlying policies constitute marine insurance for purposes of coverage by LIGA, not for

---

**2.** 28 U.S.C. § 1333 provides, in pertinent part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

**3.** "Marine insurance" has been defined as follows:
A contract whereby one party, for a stipulated premium, undertakes to indemnify the other

against certain perils or sea-risks to which his ship, freight, and cargo, or some of them, may be exposed during a certain voyage, or a fixed period of time. An insurance against risks connected with navigation, to which a ship, cargo, freightage, profits, or other insurable interest in movable property may be exposed during a certain voyage or a fixed period of time.
*Black's Law Dictionary* 723 (5th ed. 1979).

purposes of conferring admiralty jurisdiction on the federal courts.

We need not decide this issue, however, because we are not persuaded that the character of Temple Drilling's suit is governed by the character of the underlying insurance; rather, this action concerns the interpretation of a Louisiana statute. Interpretation of the underlying WC/EL policies was never at issue in the district court, and in fact, policy coverage and amounts due were stipulated by the parties. All that was at issue before the district court, and is currently before us, is the meaning of Louisiana Revised Statutes § 22:1377, and the rights and duties of LIGA and Temple Drilling thereunder. Inasmuch as admiralty jurisdiction is properly invoked for suits *"on* a contract of marine insurance," *Offshore Logistics,* 639 F.2d at 1170 (emphasis added), this action hardly qualifies. In short, the instant suit is an action seeking to interpret Louisiana *state* insurance law, and is not a suit on a "marine" policy.

We note that the "trend in modern admiralty case law ... is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." *Exxon Corp. v. Central Gulf Lines, Inc.,* —— U.S. ——, 111 S.Ct. 2071, 2076, 114 L.Ed.2d 649 (1991); *see also Kossick v. United Fruit Co.,* 365 U.S. 731, 735–38, 81 S.Ct. 886, 890–92, 6 L.Ed.2d 56 (1961); *Krauss Bros. Lumber Co. v. Dimon S.S. Corp.,* 290 U.S. 117, 124, 54 S.Ct. 105, 107, 78 L.Ed. 216 (1933) ("Admiralty is not concerned with the form of the action, but with its substance."). The "transaction" at issue here—Temple Drilling's suit against LIGA to determine LIGA's obligations to Temple Drilling under the statute—is simply not of a maritime nature.

### III. CONCLUSION

The district court in this matter lacked subject matter jurisdiction on the basis of either diversity of citizenship or admiralty. We therefore VACATE the judgment be-

low. Temple Drilling shall bear the costs of this appeal.