**Bobbi Lee LUMPKIN, f/k/a Bobbi Lee Barrett, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 89 C 8303.**

United States District Court, N.D. Illinois, E.D.

June 5, 1992.

Jon Yambert, Lindner, Speers & Reuland, P.C., Aurora, Ill., Jonathan Knowles Gray, Linder, Speers & Reuland, Chicago, Ill., for Bobbi Lee Lumpkin.

Thomas P. Walsh, U.S. Attys. Office, Chicago, Ill., for U.S.

## ORDER

NORGLE, District Judge.

Before the court is defendant's motion to dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The court grants the motion for the reasons set forth below.

## FACTS

Due to complications arising out of the natural delivery of her first child in November of 1983, Bobbi Lee Lumpkin underwent reconstructive surgery for her perineal area. Medical personnel from the naval hospital in Jacksonville, Florida performed the operation in July of 1984. During her pregnancy with her second child in 1987, Lumpkin's private physician informed her that she could not have another vaginal delivery due to the damage in her perineal region. She now brings suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, to recover for the bodily injury to her perineal area and for the resulting incontinence, or the inability to properly control both her bowel and bladder, from which she currently suffers.

Lumpkin claims that the government doctors failed to perform a proper reconstructive surgery and failed to refer her to a gynecological surgeon. Lumpkin submitted her claim to the Department of the Navy on or about March 23, 1989—nearly five years after the reconstruction surgery. The Department of the Navy acknowledged receipt of the claim but did not act upon it.

In November of 1989, Lumpkin elected to consider the failure as a final denial pursuant to 28 U.S.C. § 2675(a) and thus instituted her action. The government, as a consequence, filed the present motion to dismiss, claiming that section 2401(b) of the Tort Claims Act bars her action because she failed to initiate her claim within two years of the accrual of her cause of action.

## DISCUSSION

■ A determination on a Rule 12(b)(1) dismissal is manifestly different than one for dismissal under Rule 12(b)(6) or for summary judgment under Rule 56. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990). On a motion to dismiss under Rule 12(b)(1), the court may hold an evidentiary hearing if requested or may organize a documentary inquiry into jurisdiction. *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir.1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990); *Crawford v. United States*, 796 F.2d 924, 928–30 (7th Cir.1986). There are no specific guidelines for evidentiary hearings on jurisdiction—"any rational mode of inquiry will do." *Crawford*, 796 F.2d at 929. A district court may look to the procedures in Rule 56 as guidance in treating the motion as a loose "form of trial by affidavit" as long as the decision is based on jurisdiction and not a decision on whether sufficient evidence exists to proceed to a trial on the merits. *Id.* at 928–29.

■ Rule 12(b)(1) permits a district court to weigh the evidence and satisfy itself as to the existence of jurisdiction because the question goes to the very power of the court to hear the case. *Osborn*, 918 F.2d at 730 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). There is no presumption of truthfulness to the plaintiff's allegations, and disputes over material facts will not preclude the district court from determining the jurisdictional issues. *Id.* Last, once questioned, the plaintiff carries the burden of establishing that all jurisdictional requirements have been satisfied. *Id.; Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

■ Section 2401(b) of the Federal Tort Claims Act creates a jurisdictional question. *See Osborn*, 918 F.2d at 728 (compliance with section 2401(b) is a jurisdictional prerequisite to suit under the Federal Tort Claims Act); *Crawford*, 796 F.2d at 927 (statute of limitation under the Tort Claims Act is jurisdictional). If the plaintiff does not satisfy the limitations period, the district court is deprived of jurisdiction. *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990). Section 2401(b) provides that a plaintiff must file a claim against the United States within two years of the accrual of a cause of action. 28 U.S.C. § 2401(b). A cause of action accrues when the plaintiff has sufficient information to discover both the injury and its cause. *Nemmers v. United States*, 795 F.2d 628, 629 (7th Cir.1986). The time period begins to run when a reasonably diligent person, reacting to suspicious circumstances, would have discovered the government cause. *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985). Thus, if Lumpkin discovered, or in the exercise of reasonable diligence could have discovered, the defects and the role of the naval hospital prior to March of 1987,[1] section 2401(b) bars recovery. Lumpkin, as the party claiming the benefit of the discovery rule, has the burden of demonstrating that no reasonable person would have discovered the injury within two years of the reconstructive surgery. *Osborn*, 918 F.2d at 731; *Drazan*, 762 F.2d at 60. Lumpkin has not met this burden.

■ Defendant argues that Lumpkin could have been aware of her injury and its cause in October 1985, if not earlier. Defendant supports this claim by pointing to

---

1. Lumpkin filed her administrative claim on or about March 23, 1989. For convenience, the court will count backwards from the filing of the claim as opposed to forward from the date of surgery in determining timeliness. Because Lumpkin's March 1989 filing will be timely only if the accrual date falls between March of 1987 and March of 1989, if she discovered the injury and cause any time before March of 1987, section 2401(b) would bar the action.

the October visit during which Lumpkin complained that "something wasn't right." The court agrees. A reasonable person in Lumpkin's position would have been suspicious at or before the 1985 visit. Problems seemed to develop soon after the surgery. During her check-up in August of 1984, immediately following the surgery, the treating physician noted infection and that the repair had "partially broken down." Lumpkin never returned for follow-up visits subsequent to this check-up as the doctor directed. Lumpkin stated in her deposition that she noticed problems soon after the surgery. Because of the inconsistencies in her deposition,[2] however, the court will not place the greatest of weight on her statements. But considered as a whole, and in light of Lumpkin's burden, her statements do not bolster her position.

A little over a year later, during her first visit with Doctor Woodruff, Lumpkin communicated that she had been experiencing problems. At that visit, Doctor Woodruff noted vaginal and rectal scarring as well as "distortion" of the perineal area. Doctor Woodruff said to her, "What happened to you? I haven't seen a job like this since midwives delivered babies in the fields." A reasonable person would have investigated or at least questioned the doctor about this statement, yet she did not. Doctor Woodruff proceeded to draw pictures of the area to aid Lumpkin in understanding the extent of the defects and to aid her in making a decision whether to have the defects repaired. She declined any further surgery because "it was working all right," although it "wasn't like it was before." While the full extent of the problems may not have been apparent to Lumpkin, she had notice of the damage.

The court's conclusion is further reinforced by Doctor Woodruff's deposition. He indicated that, from his examination and discussions with Lumpkin, "it was obvious ... that she must be having a lot of troubles." Doctor Woodruff recalled that "she had difficulty with keeping things under control" on the first visit. He believed that she was aware of a problem during this first visit. Because of the "obvious injury," Doctor Woodruff inquired into whether she was having difficulty with her bowel or bladder. In response to his question she responded "sometimes, nothing dramatic." Notwithstanding Lumpkin's apparent reluctance to talk about her problems during first visit, Doctor Woodruff noted that she did nonetheless complain of a problem. The doctor believed that her reluctance to specifically discuss her problems was due to the fact that he was a new doctor to her.

Lumpkin claims that she could not have discovered her injury within two years of the reconstructive surgery because she only began experiencing incontinence around the May 1987 visit. But the critical question in the present case deals with the discovery of the injury or defect, not with the discovery of increased complications or aggravated injuries. Although it is disputed as to whether Lumpkin experienced the incontinence which she currently suffers prior to May 1987, the court finds that she did experience mild incontinence prior to 1987 and she was therefore put on notice as to the damage in her perineal region during the 1985 visit, at the latest.

Lumpkin has also failed to demonstrate that a reasonable person in her circumstances would be unaware of the governmental cause of her problems. The plain-

2. The following is a representative sample of the inconsistency in her deposition:
Q: After surgery [in 1984], did you notice anything different?
A: I noticed that I started having problems. I have frequent bowel movements and I am— I can't control them.
Q: Was this shortly after your surgery?
A: Yes.
  *    *    *    *    *    *
Q: How soon after the surgery did you notice [your bladder control problem]?

A: Well, I didn't notice until we saw Dr. Woodruff [three years after the surgery].
  *    *    *    *    *    *
Q: [D]id you think it was strange that you all of a sudden lost control of your bladder and your bowel function?
A: I thought it was different. ... I never had a baby before and I didn't know that it was supposed to be any different. I never had a baby.

tiff need not have personal or actual knowledge of the cause, and it is not necessary that she receive information of the possible cause from a doctor. Further, a plaintiff "need not know that the suspicious event is more likely than not the cause." *Nemmers*, 795 F.2d at 631. The principle behind the statute of limitations is that the statute begins to run "when a reasonable person would know enough to prompt a deeper inquiry into a potential cause...." *Id.* at 632. The child she delivered in November of 1983 was her first and only child until 1987. The temporal proximity of her surgery in 1984 and her visit to the doctor in 1985 is not distant. Any terse inquiry would reveal the likely government cause: the procedures relating to the first birth and subsequent reconstructive surgery. Lumpkin knew plenty that would have prompted a reasonable person to delve deeper into the cause of the damages to her perineal region. Instead, Lumpkin failed to act as the statute ran and her problem progressively worsened.

In light of the facts presented to the court, Lumpkin has not carried her burden of demonstrating that no reasonable person would have discovered the injuries and the cause within two years of the 1984 surgery.

## CONCLUSION

For the forgoing reasons, the court grants the defendant's motion to dismiss the case for lack of jurisdiction pursuant to Rule 12(b)(1).

IT IS SO ORDERED.