**MARINA ENTERTAINMENT COMPLEX, INC., an Indiana corporation, Plaintiff,**

v.

**HAMMOND PORT AUTHORITY, a body corporate and politic, and Lake Michigan Charters, LTD., an Indiana corporation, Defendants.**

Civ. No. 2:93–CV–54–RL.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 19, 1994.

Hugh D. Brauer, Munster, IN, for plaintiff.

J.B. Smith, Beckman, Kelley & Smith, Harold Abrahamson, Hammond, IN, Samuel L. Cappas, East Chicago, IN, for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants, the Hammond Port Authority ("Port Authority") and Lake Michigan Charters, Ltd. ("Lake Michigan Charters"), on March 16, 1993. This Court must decide whether a dispute regarding the award of a lease of a docked vessel for non-navigational purposes falls within this Court's admiralty jurisdiction. Based on the facts of this case, this Court lacks admiralty jurisdiction and hereby **GRANTS** Defendants' Motion to Dismiss.

## BACKGROUND

The SS Milwaukee Clipper ("Clipper"), the structure at issue in this case, is moored in the Hammond Marina in Hammond, Indiana. The Port Authority purchased the Clipper in 1990. Later that year, the Port Authority towed the Clipper and sank it on a specially prepared stone bed on the bottom of the Hammond Marina where the Clipper has remained for over two years. In order to tow the Clipper into the harbor without crossing portions of an in-service water main, construction schedules for inner and outer breakwalls around the Hammond Marina were delayed. These breakwalls have since been completed. The Clipper is serviced by natural gas, electrical, and sewage disposal lines which run between the Clipper and the shore.

The Clipper has been used the past two years for a variety of social and cultural events but has not been in service for transportation of goods or passengers. From time to time, the Port Authority has sought lessees for the Clipper. Recently, in January 1993, the Port Authority advertised for bids to lease areas of the Clipper. Bids were received on February 9, 1993, and an award was made to Lake Michigan Charters, Ltd. Bids varied extensively but all seemed to have been generated in the hope that at some point the Indiana State legislature might approve casino gambling at the Hammond Marina.

Plaintiff, Marina Entertainment Complex, Inc. ("Marina Entertainment") bid $6,300,000 for the lease and included provisions in its proposal for the establishment of a not-for-profit foundation and a theme restaurant as well as payment of various taxes and fees. Marina Entertainment offered less than one third the amount offered by Lake Michigan Charters in nonrefundable cash for the first six months but offered more on the back end of the lease in the event that casino gambling was approved by the State of Indiana. Marina Entertainment's bid was rejected on or about February 10, 1993.

Marina Entertainment brought this action on September 19, 1993, claiming that the Port Authority's decision to reject its bid and to accept Lake Michigan Charter's bid was not in accordance with Indiana statutory law. Pursuant to Indiana Code § 8–10–5–15, contracts for the lease or sale of structures by a port authority shall be made only to the highest and best bidder. Marina Entertainment asserts that this Court has admiralty jurisdiction under 28 U.S.C. § 1333(1) because this matter involves a contract for the lease of a vessel located upon the navigable waters of the United States. No other basis for subject matter jurisdiction is presented.

## DISCUSSION

■ When deciding a motion to dismiss based on lack of subject matter jurisdiction, disputes over material facts will not prevent a district court from determining jurisdictional issues. *Lumpkin v. United States,* 791 F.Supp. 747, 749 (N.D.Ill.1992). Instead, Rule 12(b)(1) allows a district court to weigh the evidence in order to satisfy itself that jurisdiction exists. *Id.*

■ Once challenged, the nonmoving party must bear the burden of establishing that jurisdictional requirements have been met. *Kontos v. United States Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987). When the party moving for dismissal under Rule 12(b)(1) challenges the factual basis for jurisdiction, the nonmoving party must submit affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction. *Id.*

The Port Authority and Lake Michigan Charters argue that this Court lacks admiralty jurisdiction over this matter because the disputed award decision is not maritime in nature. Additionally, they contend that the Court lacks admiralty jurisdiction because the Clipper is a "dead ship." Marina Entertainment maintains that jurisdiction is proper because this case involves a maritime contract, the lease of a vessel.

■ Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C.A. § 1333(1) (West 1993). To determine the boundaries of admiralty jurisdiction, courts must look to the purpose of the grant. *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, ——, 111 S.Ct. 2071, 2074, 114 L.Ed.2d

649 (1991). As the Supreme Court recently noted, the "fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *Sisson v. Ruby,* 497 U.S. 358, 364, 110 S.Ct. 2892, 2897, 111 L.Ed.2d 292 (1990) (quoting *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)). *See also Exxon Corp.,* 500 U.S. at ———–——, 111 S.Ct. at 2074–75. Thus, when deciding whether a claim comes within admiralty jurisdiction, "a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Atlantic Mut. v. Balfour MaClaine Intern.,* 968 F.2d 196, 200 (2d Cir. 1992).

■ At best, the matter at hand has only a tangential relationship to maritime concerns. Marina Entertainment asserts that disputes regarding the lease of a ship have long been recognized as within admiralty jurisdiction. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Armour & Co. v. Ft. Morgan S.S. Co.,* 270 U.S. 253, 258–59, 46 S.Ct. 212, 213–14, 70 L.Ed. 571 (1926). However, this analysis mischaracterizes the real issue in this action: Marina Entertainment is not contesting the terms of a lease; instead, it is contesting the Port Authority's compliance with a state statute for awarding the lease.

In *Temple Drilling Co. v. Louisiana Ins. Guar. Ass'n,* 946 F.2d 390 (5th Cir.1991), the Fifth Circuit encountered a similar issue when a drilling rig owner sought indemnification from an insurance association for amounts paid to an injured seaman on a maritime insurance policy. Although suits involving marine insurance policies generally fit within admiralty jurisdiction, the Fifth Circuit determined that the district court did not have admiralty jurisdiction because the suit was based on the interpretation of a Louisiana state insurance statute rather than the underlying insurance policy. *Id.* at 394–95. As such, the suit was not maritime in nature. *Id.* at 395.

Hereto, this matter also involves interpretation of a state statute rather than applica-

tion of admiralty law. To resolve Marina Entertainment's claim, this Court would have to interpret Indiana's statutory language as to what constitutes the "highest and best bidder." *See* Ind.Code § 8–10–5–15. Given that this claim is based on pre-contractual state law concerns, this Court finds that this claim is too attenuated from maritime commerce to fit within this Court's admiralty jurisdiction.

■ Even if this Court believed, however, that this suit involves a traditional maritime concern, this Court still would not have admiralty jurisdiction because the Clipper is no longer a vessel for purposes of admiralty jurisdiction. Only vessels actively in navigation or temporarily withdrawn are subject to admiralty. *Mammoet Shipping Co., B.V. v. Mark Twain,* 610 F.Supp. 863, 866 (D.C.N.Y. 1985). Under the dead ship doctrine, a ship loses its status as a vessel when its function is changed so that it no longer has navigational functioning capabilities. *Goodman v. 1973 26 Foot Trojan Vessel,* 859 F.2d 71, 73 (8th Cir.1988); *Hayford v. Doussony,* 32 F.2d 605, 605 (5th Cir.1929).

The parties concede that the Clipper is not currently a seafaring vessel. However, they present affidavits as to the Clipper's future ability to be used as a ship. After review of these affidavits, this Court can only conclude that the Clipper has been indefinitely withdrawn from navigation and, essentially, is a "dead ship." The Clipper rests in a specially prepared stone bed with natural gas, electrical, and sewage disposal lines running between the Clipper and the shore. As Marina Entertainment's own expert, Allen LeClair, indicates, several measures would have to be taken before the Clipper could be moved from the Hammond Marina in order to be used for navigational purposes. First, the anchor chain and existing liquid ballast would have to be removed to enable the Clipper to float freely. (Allen LeClair Supp.Aff. at 3). Second, in order for the Clipper to be recertified by the United States Coast Guard and the American Bureau of Shipping to operate as a ship, various cuts in the Clipper's hull would have to be resealed. *Id.* Third, the utility connections to the shore would have to be removed. *Id.* Fourth, the Clipper also

would have to be rewired to meet the present standards of the American Bureau of Shipping and the United States Coast Guard. *Id.*

Although the parties disagree as to the difficulty in removing the Clipper from the Hammond Marina, the weight of the evidence indicates that it would be highly impractical, if not impossible, to safely remove the Clipper due to the curvature of the mouth of the harbor and the breakwall. (See Robert Kenney Aff. at 3; Glenn V. Dawson Aff. at 3–5). In fact, to remove the Clipper, portions of the dock or breakwall probably would have to be removed. (Allen LeClair Aff. at 2; Robert Kenney Aff. at 3). These measures hardly seem minimal and suggest to this Court that the Clipper has found its final resting place.

*CONCLUSION*

Given that the Clipper is a "dead ship" as well as the fact that the underlying claim is not maritime in nature, admiralty jurisdiction does not exist in this case. As there has been no other asserted basis for jurisdiction, this Court lacks subject matter jurisdiction over this matter. Accordingly, Defendants' Motion to Dismiss is hereby **GRANTED.**